ATTORNEY GENERAL *vs.* JOSEPH LAFFEY, JR., & another[1]
(and two companion cases[2]).

Suffolk. January 17, 1983. — April 12, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Governor. Massachusetts Port Authority. Commonwealth,* Officers and employees.

Statute 1964, c. 740, § 3, a measure which repealed substantially all provisions of law formerly requiring the advice and consent of the Governor's Council to gubernatorial appointments in the executive branch of government, and which provided further that, within fifteen days following the making of any appointment which theretofore had required the advice and consent of the Council, the Governor may remove without cause the person so appointed, empowered the Governor to remove two members of the Massachusetts Port Authority within fifteen days following their appointment to office by a previous Governor. [745-748]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk, one on January 10, 1983, and two on January 11, 1983.

The cases were reported by *Abrams, J.*

*James T. Grady (Gabriel O. Dumont, Jr.,* with him) for Joseph Laffey, Jr.

*George R. Sprague (Jay A. Lupica* with him) for Eric H. Jostrom.

*Carl Valvo,* Assistant Attorney General (*Stephen S. Ostrach,* Assistant Attorney General, with him) for the Governor & others.

---

[1] Eric H. Jostrom.

[2] One case is Joseph Laffey, Jr. *vs.* Michael S. Dukakis, as he is the Governor of the Commonwealth, Massachusetts Port Authority, and Michael Joseph Connolly, as he is the Secretary of the Commonwealth. The other case involves the same defendants and was brought by Eric H. Jostrom.

WILKINS, J. These actions present the question whether Governor Michael S. Dukakis lawfully removed Joseph Laffey, Jr., and Eric H. Jostrom as members of the Massachusetts Port Authority (Authority). On January 17, 1983, we heard argument in these consolidated cases which a single justice had reserved and reported to us on the pleadings and a statement of agreed facts. That same day, in the action brought by the Attorney General seeking a declaration that the Governor had validly removed Laffey and Jostrom from office as members of the Authority, we ordered that judgment be entered that Laffey and Jostrom had no right to hold office as members of the Authority.[3] This opinion is in explanation of that order and further provides for the disposition of the companion cases.

On January 6, 1983, his last day in office, Governor Edward J. King appointed Laffey and Jostrom as members of the Authority, and each took his oath of office. Michael S. Dukakis became Governor shortly after noon on January 6, 1983. On January 7, 1983, Governor Dukakis sent similar letters to Laffey and Jostrom stating that "[p]ursuant to the authority vested in me by St. 1964, Chapter 740, section 3, I hereby remove you from membership on the Board of the Massachusetts Port Authority."

Within four days, both Laffey and Jostrom filed separate but substantially identical complaints seeking declaratory and injunctive relief against the Governor, the Secretary of the Commonwealth, and the Authority.[4] Each sought to

---

[3] The order entered on January 17, 1983, reads: "In the action of the Attorney General v. Joseph Laffey, Jr. and Eric H. Jostrom, judgment shall enter in the nature of quo warranto that Joseph Laffey, Jr. and Eric H. Jostrom have no present right to hold or to claim to hold office as members of the Massachusetts Port Authority, and a rescript shall issue forthwith. An opinion or opinions will follow.

"Since the above order is dispositive of any controversies among the parties, a further order is unnecessary at this time in the actions of Joseph Laffey, Jr. v. Michael S. Dukakis & others and Eric H. Jostrom v. Michael S. Dukakis & others."

[4] The Authority has taken no position on the merits of the issues before us.

enjoin the Governor from purporting to appoint any other person to replace him as a member of the Authority's board and a declaration that the Governor's purported removal of him was of no legal force or effect. The Governor and the Secretary of the Commonwealth moved to dismiss the complaints, alleging that the Governor was not amenable to suit for conduct in the performance of his official duties, that G. L. c. 231A did not authorize declaratory relief against the Governor, and that there was no actual controversy between the plaintiffs and the Secretary of the Commonwealth.

On January 11, 1983, the Attorney General filed a complaint in the nature of quo warranto against Laffey and Jostrom. He sought a "declaration that those two individuals have been validly removed from such office by the Governor and that therefore they no longer are members of that Authority." He relied on G. L. c. 214, § 1, as appearing in St. 1973, c. 1114, § 62, concerning the jurisdiction of this court "of all cases and matters of equity cognizable under the general principles of equity jurisprudence," and on G. L. c. 249, § 9, as appearing in St. 1973, c. 1114, § 292, providing that this court shall have "jurisdiction of civil actions brought by the attorney general against a person holding or claiming the right to hold an office or employment, the salary or compensation of which is payable by the commonwealth."[5]

The Governor purported to remove Laffey and Jostrom pursuant to St. 1964, c. 740, § 3, which is set forth in the

---

[5] Laffey and Jostrom do not deny that the Attorney General's complaint properly raises the substantive question of their right to claim office as members of the Authority. Because we decide the issue in that action, we need not consider whether Laffey and Jostrom were entitled to maintain actions seeking declaratory and injunctive relief against the Governor, the Secretary of the Commonwealth, or the Authority. Entry of the order in the Attorney General's action against Laffey and Jostrom resolves the controversy on which their declaratory judgment actions were founded. We shall direct that judgments be entered in those actions dismissing the complaints at least for the reason that they no longer present an "actual controversy" within the meaning of G. L. c. 231A, § 1.

margin.[6] With certain exceptions not relevant here, the first paragraph of § 3 repealed all provisions of law requiring the advice and consent of the Governor's Council to appointments in the executive department and to the removal from office of persons holding office in the executive department. The third paragraph of § 3 provides that "[a]t any time within fifteen days after the making of any such appointment which heretofore required the advice and consent of the council the governor may, without cause, remove the person so appointed." Chapter 740 was approved by the voters on November 3, 1964, pursuant to the referendum procedure set forth in art. 48 of the Amendments to the Constitution of the Commonwealth, as amended by art. 74 of the Amendments. See *Barnes* v. *Secretary of the Commonwealth,* 348 Mass. 671 (1965). Chapter 740 greatly reduced the scope of the statutory authority of the Governor's Council to pass on gubernatorial appointments.

The third paragraph of § 3 literally applies to Governor Dukakis's removal of Laffey and Jostrom as members of the Authority. He acted "within fifteen days after the making of any such appointment." Their appointments were ones which before St. 1964, c. 740, § 3, required Council approval. See St. 1956, c. 465, § 2 ("[t]he Authority shall consist of seven members all of whom shall be appointed by

---

[6] "Subject to section two of this act and except as required by the constitution of the commonwealth, so much of each provision of the General Laws and of any special law as requires the advice and consent of the council to any appointment in the executive department, or to the fixing of any salary, or other compensation for services rendered, in the executive department, or to the removal of any person holding office in the executive department, including without limitation, any person appointed prior to the effective date of this act, is hereby repealed.

"Any such appointment in the executive department by any officer other than the governor which heretofore required the advice and consent of the council shall instead require the approval of the governor.

"At any time within fifteen days after the making of any such appointment which heretofore required the advice and consent of the council the governor may, without cause, remove the person so appointed."

the governor by and with the advice and consent of the council").[7]

It seems reasonably clear that the fifteen-day period in the third paragraph was designed to replace in a general, but not precise, sense the period of delay that inevitably existed between an appointment by a Governor and the Council's approval of that appointment. During such a period of delay, new information might become available about an appointee as a result of publicity attendant to the Governor's appointment. Thus, the third paragraph provides an opportunity for the Governor, without cause, to undo the appointment. The need for a fifteen-day period to consider the merits of an appointment is no less with respect to appointments made during the last fifteen days of a Governor's term than with respect to any earlier appointment.

The third paragraph of § 3 is not expressed in terms of an appointing Governor removing a person within fifteen days of his appointment of that person. It does not say, as it could, that a Governor may only remove a person that he appointed. It refers to the office of the Governor, and not to a specific person. It would include a Governor acting early in his second, consecutive term to remove a person he appointed toward the very end of his first term as Governor. It also includes a newly elected Governor, succeeding another Governor.

We see in § 3 no limitation on the term of a Governor in violation of art. 64, § 1, of the Amendments to the Constitution of the Commonwealth. His term remains the same. Section 3 simply increases the Governor's removal power during the first fifteen days of his appointment and makes certain appointments made during the last fifteen days of a term subject to reversal early in the next one. Such a provi-

---

[7] There is no merit to Jostrom's claim (not made by Laffey) that the third paragraph of § 3 refers only to appointments made by subordinates of the Governor. "[A]ny such appointment" in the second and third paragraphs refers back to appointments to the positions referred to in the first paragraph of § 3.

sion was within the authority of the people in enacting St. 1964, c. 740.

There is no merit to the claim that St. 1964, c. 740, § 3, does not supersede the provision in the Massachusetts Port Authority Act that "[e]ach member of the Authority may be removed by the governor, with the advice and consent of the council, for misfeasance, malfeasance, willful neglect of duty but only after reasonable notice and a public hearing . . ." (St. 1956, c. 465, § 2). The removal-for-cause provisions of the Port Authority Act are not immune from amendment, and that is precisely what St. 1964, c. 740, § 3, did as to a member of the Authority during the first fifteen days of his appointment. The people adopted St. 1964, c. 740, with the intent of reducing the scope of the Council's approval of appointments and removals by the Governor. There was no need to refer specifically to the Port Authority Act. We are not presented with a conflict between a General Law, assuming the Port Authority Act to be a General Law, and a special act dealing inconsistently with the same subject. Section 3 eliminated the effect of the removal for cause provisions of the Port Authority Act during the first fifteen days after a member's appointment. The intention of St. 1964, c. 740, § 3, to supersede the appointment and removal provisions of numerous previous enactments is obvious.

An order for judgment has already been entered in the Attorney General's action in the nature of quo warranto. In the actions brought by Laffey and Jostrom, judgments shall be entered dismissing the complaints.

*So ordered.*