JOHN P. MCGONIGLE *vs.* THE GOVERNOR & others.[1]

Suffolk. May 3, 1994. - June 30, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Governor. Sheriff. Attorney General. Public Officer. Public Employment*, Suspension, Removal. *Words*, "Appointing authority."

The Governor of the Commonwealth lacked the power to suspend an indicted county sheriff under procedures set forth in G. L. c. 268A, § 25, authorizing an "appointing authority" to suspend a county employee under indictment for misconduct where, since the sheriff was an elected official, the Governor was not the "appointing authority" of the sheriff. [148-150, 151]

Statement that G. L. c. 211, § 4, provides this court with broad authority to remove a sheriff, as well as certain other elected or appointed officials, if sufficient cause is shown and the public good so requires. [150-151]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 15, 1994.

The case was reported by *Wilkins*, J.

*Jack I. Zalkind* (*Robert D. Cohan* with him) for the plaintiff.

*Thomas A. Barnico*, Assistant Attorney General, for the defendants.

LIACOS, C.J. John P. McGonigle commenced this action in the county court challenging the Governor's decision to suspend him without pay from the office of sheriff of Middlesex County. The Governor purported to act, pending the completion of a trial on a Federal criminal indictment lodged against the sheriff, pursuant to G. L. c. 268A, § 25 (1992

[1]The Attorney General, Robert C. Krekorian, in his capacity as temporary sheriff of Middlesex County, and James E. Fahey, in his capacity as treasurer of Middlesex County.

ed.). A single justice reserved and reported the question whether "the Governor of the Commonwealth is 'the appointing authority' of the Sheriff of the County of Middlesex within the meaning of those words in G. L. c. 268A, sec. 25." We hold that where the sheriff is an elected official, the Governor was not an "appointing authority" and, accordingly, lacked the power to suspend the plaintiff under the procedures set forth in G. L. c. 268A, § 25.

The relevant facts taken from the amended verified complaint are as follows.[2] On January 10, 1985, the then Governor appointed the plaintiff as sheriff of Middlesex County to fill the unexpired term of his predecessor. On November 4, 1986, the plaintiff was elected to a six-year term, and on November 3, 1992, he was reelected to another term.

On April 8, 1994, a United States grand jury for the District of Massachusetts returned a multi-count indictment against the plaintiff charging him with racketeering conspiracy, racketeering, extortion, conspiracy to defraud, and filing false tax returns. At his arraignment in Federal court, the plaintiff pleaded not guilty to all charges and was released on a $25,000 unsecured bond.

On April 13, 1994, the plaintiff's attorney received notification, by a letter signed by both the Governor and the Attorney General, that, pursuant to G. L. c. 268A, § 25, the plaintiff had been suspended without pay from his position as sheriff of Middlesex County. This letter also indicated that (1) appropriate action would be taken to replace the plaintiff "on at least a temporary basis"; and (2) the Governor and the Attorney General intended, pursuant to G. L. c. 211, § 4 (1992 ed.), to file a complaint seeking the plaintiff's permanent removal from office.[3]

The plaintiff claims that, because he is an elected official, there is no "appointing authority" to which he is subject. Ac-

[2]There appears to be no factual dispute between the parties at this stage of the proceedings.

[3]On the same day, Special Sheriff Anthony Sasso informed the plaintiff that the Governor had appointed Robert C. Krekorian as "Temporary Sheriff" and that he was demanding access to the sheriff's private offices.

cordingly, he claims that the Governor impermissibly suspended him under G. L. c. 268A, § 25, a provision which authorizes an "appointing authority" to suspend without pay a county employee under indictment for misconduct.[4] The defendants contend that, although G. L. c. 268A does not define the term "appointing authority," this court, for the purposes of this action, should construe the term to include the official authorized to appoint a person to the office of sheriff on a vacancy in the office; that is, the Governor under G. L. c. 54, § 142.[5]

We disagree with the defendants' interpretation of G. L. c. 268A, § 25. The language of this section is clear in that it provides the "appointing authority" with the power to suspend a county official on the basis of a criminal indictment charging misconduct. Nothing in this section suggests that the provision for suspension applies to an official who is elected and not appointed.[6] Where an individual is elected by

---

[4]General Laws c. 268A, § 25 (1992 ed.), provides, in pertinent part: "An officer or employee of a county, city, town or district, howsoever formed, including, but not limited to, regional school districts and regional planning districts, or of any department, board, commission or agency thereof may, during any period such officer or employee is under indictment for misconduct in such office or employment or for misconduct in any elective or appointive public office, trust or employment at any time held by him, be suspended by the appointing authority, whether or not such appointment was subject to approval in any manner. . . ."

[5]General Laws c. 54, § 142 (1992 ed.), provides, in relevant part: "Upon a vacancy by removal or otherwise . . . in the office of . . . sheriff, the governor with the advice and consent of the council may appoint some person thereto until a . . . sheriff is qualified."

[6]We reject the defendants' contention that, because G. L. c. 268A, § 1 (1992 ed.), includes within the definition of "county employee" any person holding an office by election, the provisions of § 25 apply to elected officials. In G. L. c. 268A (1992 ed.), the Legislature intended to regulate numerous aspects of the professional conduct of State, county, and municipal employees, whether elected or appointed. For example, provisions in this chapter provide standards for both elected and appointed officials as to soliciting or accepting gifts (G. L. c. 268A, § 3); reporting conflict of interests (G. L. c. 268A, § 6A); receiving compensation from an additional source (G. L. c. 268A, § 11), and disclosing financial interests (G. L. c. 268A, § 13). In contrast to these other sections, in G. L. c. 268A, § 25,

the people, there is no "appointing authority."[7] If the Legislature intended to confer the authority to suspend an elected official on the office of Governor, it could have clearly identified the individual or office, as was the case in a related provision, G. L. c. 30, § 59 (1992 ed.), which expressly allows the Governor to suspend any individual he appointed to office if such officer or employee of the Commonwealth is under indictment for misconduct.

We note that, additionally, for certain elected county officials, including sheriffs, the Legislature has provided a distinct procedure for removing such an individual from office. General Laws c. 211, § 4,[8] provides this court with broad authority to remove a sheriff, as well as other elected county officials, if sufficient cause is shown and the public good so requires. See, e.g., *Massachusetts Bar Ass'n* v. *Cronin*, 351 Mass. 321, 322 (1966) (holding, in an action seeking to remove a District Court clerk, that the court's scope of authority under G. L. c. 211, § 4, is not limited by a provision which authorized the Governor to appoint District Court clerks); *Attorney Gen.* v. *Flynn*, 331 Mass. 413, 415, 428 (1954) (recognizing that G. L. c. 211, § 4, is couched in the

---

the Legislature explicitly limited the scope of the power to suspend to an "appointing authority."

[7]The defendants argue that the Governor is the "appointing authority," relying in part on our decisions in *Attorney Gen.* v. *Laffey*, 388 Mass. 743 (1983), and *Welch* v. *Mayor of Taunton*, 343 Mass. 485 (1962). Both cases are inapposite; neither reaches the issue whether an elected official can be removed by one who might, in other circumstances, become an appointing authority. In *Laffey*, for example, the issue was whether a sucessor Governor could remove, pursuant to St. 1964,.c. 740, § 3, members of the Massachusetts Port Authority *appointed* by his predecessor. We held that he could because the power of appointment is in the office of the Governor, not the person. *Id.* at 747. In *Welch*, *supra* at 489, we held essentially the same as to the office of mayor.

[8]General Laws c. 211, § 4, as amended by St. 1992, c. 379, § 62, provides, in relevant part: "A majority of the justices . . . if sufficient cause is shown therefor and it appears that the public good so requires, may, upon a complaint, upon a summary hearing or otherwise, remove a clerk of the superior court in Suffolk county, or of a district court, a county commissioner, a county treasurer, sheriff, register of probate or district attorney, or the recorder of the land court. "

broadest terms with no qualifications or restrictions). Although this provision does not specifically enumerate the authority to suspend such an official, it is clear that the power to remove an official includes within it the authority to suspend that individual.[9] See *Tobin* v. *Sheriff of Suffolk County*, 377 Mass. 212, 214 (1979) (holding that the authority "to remove a chief deputy sheriff or a court officer includes within it the authority to suspend the employment of such a person"); *Multi-Line Ins. Rating Bureau* v. *Commissioner of Ins.*, 357 Mass. 19, 22 (1970) (recognizing that, when "a general power is given, all authority necessary to carry it out is inferred by implication"). See also *Burnap* v. *United States*, 252 U.S. 512, 515 (1920) (power of suspension an incident of power of removal).

Thus, considering both the language of § 25 and the scope of power expressly granted to this court under G. L. c. 211, § 4, we conclude that the Legislature did not intend to confer on the Governor or the Attorney General the power to suspend the sheriff.[10] See *Tilton* v. *Haverhill*, 311 Mass. 572, 577-578 (1942) (recognizing that the "intent of [a] statute is to be ascertained from all its terms and parts and the subject matter to which it relates, and [the statute] should be so construed as to make it an effectual piece of legislation in harmony with common sense and sound reason").

We are mindful of the fact that the only matter presently before the court is the specific question reserved and reported by the single justice. We have not been asked in this action to decide whether this court may, solely on the basis of an indictment, suspend or remove the sheriff; whether a suspension under G. L. c. 211, § 4, should be with or without com-

---

[9]In *Matter of Dugan*, 416 Mass. 461, 462 (1993), this court, after hearing the parties, ordered the clerk suspended from all powers and duties as clerk-magistrate before removing her from office pursuant to G. L. c. 211, § 4. *Id.* at 463.

[10]To our knowledge, the Attorney General does not have the authority to appoint a sheriff on a vacancy. Thus, his signature to the letter notifying the plaintiff of his suspension pursuant to G. L. c. 268A, § 25, adds nothing to the defendants' claim. No argument is made that the Attorney General relies on other, or separate, powers.

pensation; or whether, if the sheriff should be suspended by this court, the Governor has the authority to appoint his replacement on a temporary basis.

The Governor has filed an action now pending before the full court seeking to invoke the court's authority to remove the plaintiff pursuant to G. L. c. 211, § 4. We anticipate that such other issues will be addressed in that context, and may need to be decided, in the Governor's separate action.[11]

*Conclusion.* We answer the reported question, "No."

*So ordered.*

---

[11]The parties are advised that the court stands ready, on due notice, to commence hearings on the action brought under G. L. c. 211, § 4, whenever the parties are ready. We have not been asked to decide the consequences of concluding, as we have, that the Governor acted beyond his powers.