378 P.3d 1003

KAUA'I POLICE COMMISSION, by its Commissioners Charles C.C. Iona, Chair, Mary K. Hertog, Vice Chair, Savita Agarwal, Gerald Bahouth, Kevin T. Mince, Catherine Adams, Donald K. Okami, Sr.,[1] in their official capacities, Plaintiffs–Appellants,

v.

Bernard P. CARVALHO, Jr., in his official capacity as the Mayor of the County of Kaua'i, Defendant–Appellee,

and

Kaua'i Police Commission, by its Commissioners Charles C.C. Iona, Chair, Mary K. Hertog, Vice Chair, Savita Agarwal, Gerald Bahouth, Kevin T. Mince, Catherine Adams, Donald K. Okami, Sr., in their official capacities, Plaintiffs–Appellants,

v.

Bernard P. Carvalho, Jr., in his official capacity as the Mayor of the County of Kaua'i, Defendant–Appellee.

Nos. CAAP–13–0000015, CAAP–12–0001123.

Intermediate Court of Appeals of Hawai'i.

June 30, 2016.

As Corrected July 1, 2016.

1. Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c)(1), the current Chair, Vice Chair, and Commissioners of the Police Commission have been substituted as parties.

Corlis J. Chang (Edmund K. Saffery, Marissa L.L. Owens, and Scott K.D. Shishido with her on the briefs) for Plaintiffs–Appellants.

Wendell H. Fuji (Anthony F. Suetsugu with him on the briefs) for Defendant–Appellee.

FUJISE, Presiding Judge, LEONARD and GINOZA, JJ.

Opinion of the Court by GINOZA, J.

The question presented in this case is whether, under the Charter of the County of Kaua'i (2010) (Kaua'i Charter), the authority to suspend and/or otherwise discipline the Chief of Police of the County of Kaua'i (Police Chief) rests with the Mayor of the County of Kaua'i or with the Kaua'i Police Commission.

Plaintiff–Appellant Kaua'i Police Commission, by its Commissioners in their official capacities (Police Commission),[2] contends that the Circuit Court of the Fifth Circuit (circuit court) [3] erred in concluding that the authority to suspend and/or otherwise discipline the Police Chief lay solely with Defendant–Appellee Bernard P. Carvalho, Jr., in his official capacity as the Mayor of the County of Kaua'i (Mayor).

The Kaua'i Charter does not clearly address whether the Mayor or the Police Commission has the authority to suspend and/or otherwise discipline the Police Chief. We must therefore consider a number of provisions within the context of the Kaua'i Charter as a whole. For the reasons discussed below, we hold that, under the provisions of the Kaua'i Charter, the Police Commission, which expressly has the right to appoint and remove the Police Chief and has supervisory authority over the Police Chief pursuant to a number of provisions, has the authority to suspend and/or otherwise discipline the Police Chief.

## I. Background

The Police Commission filed a Complaint for Declaratory Relief on June 27, 2012, seeking a judgment that the Police Commission holds the sole authority to suspend and/or otherwise discipline the Police Chief.

On September 7, 2012, the Police Commission filed a motion for summary judgment. In support of the motion, the Police Commission submitted a declaration from Ernest Kanekoa, Jr. (Kanekoa), the Chairman of the Police Commission at that time. In his declaration, Kanekoa asserted, among other things, the following: on or about February 2, 2012, the Mayor suspended the Police Chief, Darryl D. Perry, from work for seven days because of an ongoing investigation stemming from a complaint filed against high ranking officials within the Kaua'i Police Department (Police Department) by an officer employed at police headquarters; after the seven-day suspension, the Police Chief was placed on administrative leave; thereafter, the Police Commission unanimously voted to have the Police Chief return to work and ordered him to do so on or about February 22, 2012; when the Police Chief returned to work on February 22, 2012, he was not allowed back into his office and was informed that the Mayor refused to reinstate him and that he was still on administrative leave; the Police Commission and the Mayor disagreed as to whether the Police Commission or the Mayor had the authority under the Kaua'i Charter to suspend and/or otherwise discipline the Police Chief; despite the disagreement, the Police Commission and the Mayor reached a decision which allowed the Police Chief to return to work on or about March 12, 2012; on or about July 13, 2012, the Mayor requested that the Police Commission further investigate the Police Chief's actions in conjunction with the internal investigation of the workplace complaint.

On October 10, 2012, the Mayor filed a cross-motion for summary judgment. In the cross-motion, the Mayor did not assert any issue with the facts as presented by the Police Commission, contending instead that this case should be decided on the language of the Kaua'i Charter. However, on October 19, 2012, the Mayor filed a memorandum in opposition to the Police Commission's motion for summary judgment and submitted therewith the declaration of Gary Heu (Heu), the Managing Director of the County of Kaua'i at that time. Heu declared that the Mayor did suspend the Police Chief, but not for the

---

**2.** At the time that the Police Commission filed the Complaint for Declaratory Relief on June 27, 2012, the commissioners were Ernest Kanekoa, Jr., Chair, James O'Connor, Vice Chair, Charles Iona, Bradley Chiba, Randall Francisco, Alfred Nebre, Jr. and Donald Okami, Sr.

**3.** The Honorable Randal G.B. Valenciano presided.

reasons stated by Kanekoa. Heu further denied that the Mayor requested the Police Commission to further investigate the Police Chief, as set forth in Kanekoa's declaration. Heu's declaration did not elucidate any other reasons for the suspension or the administrative leave. In his memorandum, the Mayor asserted that, while he disputes the accuracy and completeness of some of the factual statements in Kanekoa's declaration, the disputed facts were not relevant to the legal issue before the circuit court.

On November 28, 2012, the circuit court entered an order denying the Police Commission's motion for summary judgment and granting the Mayor's cross-motion for summary judgment. On January 2, 2013, the circuit court issued its Final Judgment for Declaratory Judgment, which states in relevant part:

Pursuant to the provisions of the County of Kauai Charter:

1. The Mayor of the County of Kauai is the chief executive officer of the County of Kauai, and as such, has authority over all departments and agencies within the executive branch, unless the Kauai County Charter provides otherwise;

2. The Mayor of the County of Kauai, as the chief executive officer, has the power to suspend, place on administrative leave, and/or otherwise discipline the Kauai County Chief of Police pursuant to the County of Kauai Charter; and

3. While the Kauai Police Commission may remove the Kauai County Chief of Police in accordance with Section 11.04 of the County of Kauai Charter, the Kauai Police Commission does not have the authority to suspend and/or otherwise discipline the Kauai County Chief of Police.

The Police Commission timely appealed.

## II. Mootness

Neither party contends that this case is moot, but we must consider mootness as it may affect our jurisdiction in this case. *Kaleikini v. Thielen*, 124 Hawai'i 1, 12, 237 P.3d 1067, 1078 (2010) (providing that mootness is an issue of subject matter jurisdiction); *Bacon v. Karlin*, 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986) (providing that an appellate court must ensure that it has jurisdiction to hear and determine each case). In light of the record and the information provided about the events triggering this lawsuit, it is unclear if the circumstances giving rise to this case have been resolved between the parties, such that the case is moot.[4] *See In re Thomas*, 73 Haw. 223, 226, 832 P.2d 253, 254 (1992)("A case is moot where the question to be determined is abstract and does not rest on existing facts or rights. Thus, the mootness doctrine is properly invoked where 'events ... have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised.'" (quoting *Wong v. Bd. of Regents, Univ. of Haw.*, 62 Haw. 391, 394, 616 P.2d 201, 203–04 (1980)).

Even if this case is moot, however, either the public-interest exception or the "capable of repetition, yet evades review" exception to the mootness doctrine apply. *See Right to Know Comm. v. City Council, City & County of Honolulu*, 117 Hawai'i 1, 9, 175 P.3d 111, 119 (App. 2007) (discussing the applicability of both exceptions to the mootness doctrine). Regarding the public-interest exception:

A public-interest exception to the mootness doctrine arises "when the question involved affects the public interest and it is likely in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court." *Johnston v. Ing*, 50 Haw. 379, 381, 441 P.2d 138, 140 (1968). "Among the criteria considered in determining the exis-

---

4. According to Kanekoa's declaration, the parties reached a "decision" that allowed the Police Chief to return to work. However, Kanekoa's declaration further states that: the dispute between the Police Commission and the Mayor remains as to who has the authority to suspend and/or otherwise discipline the Police Chief; and that the legal uncertainty concerning this issue is interfering with the Police Commission's ability to carry out its obligations under the Kaua'i Charter "to assess and/or supervise the [Police Chief's] actions concerning the Police Department's investigation" into the workplace complaint.

tence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." *Id.* (quoting *In re Brooks' Estate*, 32 Ill.2d 361, 364, 205 N.E.2d 435, 438 (1965))[.]

*Id.* (brackets omitted). Here, the issue of who possesses the authority to suspend and/or otherwise discipline the Police Chief, a public official, clearly affects the public interest. Further, given the ongoing disagreement between the Police Commission and the Mayor, it is an issue reasonably likely to recur in the future and yet, because of the need to have a functioning police department, it seems likely any future dispute would become moot before an appellate court can decide the issue. The circumstances are such that an authoritative determination on this issue is desirable in order to provide guidance for public officers in the County of Kaua'i.

■ Another exception to the mootness doctrine arises when the issue is "capable of repetition, yet evades review." *Id.* Here, as noted above, the issue of whether the Mayor or the Police Commission is authorized to suspend and/or otherwise discipline the Police Chief seems reasonably likely to recur, yet it is likely that any such suspension or discipline would be served before any judicial review can occur or, alternatively, that some other resolution would be reached by the parties (as in this case) to avoid disruption of the police department's functioning. Thus, this exception applies as well.

### III. Standard of Review

■ The grant or denial of a motion for summary judgment is reviewed *de novo*. *Price v. AIG Haw. Ins. Co.*, 107 Hawai'i 106, 110, 111 P.3d 1, 5 (2005). Neither party contends that there are genuine issues of material fact precluding summary judgment. Although the parties disagree over certain facts, they agree that the disputed facts are not *material* to the question decided by the circuit court. *See Ralston v. Yim*, 129 Hawai'i 46, 55–56, 292 P.3d 1276, 1285–86 (2013)

("A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."). Thus, the question in this appeal is whether the circuit court correctly applied the law to the undisputed material facts.

■ In reviewing the circuit court's ruling, we must interpret the Kaua'i Charter. The interpretation of a county charter is similar to the interpretation of a statute. *Dejetley v. Kaho'ohalahala*, 122 Hawai'i 251, 262, 226 P.3d 421, 432 (2010).

The interpretation of a statute is a question of law that is reviewed *de novo*.

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning. Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

*Haole v. State*, 111 Hawai'i 144, 149–50, 140 P.3d 377, 382–83 (2006) (brackets omitted) (quoting *Morgan v. Planning Dep't, County of Kaua'i*, 104 Hawai'i 173, 179–80, 86 P.3d

982, 988–89 (2004)). Because the Kaua'i Charter was drafted by the Kaua'i Charter Commission in 1967–1968 and subsequently adopted by the voters of the County of Kaua'i in 1968, we look to minutes of the Kaua'i Charter Commission for relevant legislative history to the extent necessary.

## IV. Discussion

■ The sole issue presented by this appeal is whether the Kaua'i Charter vests the Police Commission or the Mayor with the power to suspend and/or otherwise discipline the Police Chief. The language of the Kaua'i Charter does not explicitly provide an answer and both sides make reasonable arguments.

The Police Commission does not dispute that, pursuant to Kaua'i Charter § 7.05(A), the Mayor, as the chief executive officer of the County of Kaua'i, has direct supervision over all departments and agencies within the executive branch, unless the Kaua'i Charter provides otherwise. The Police Commission contends, however, that the Kaua'i Charter, read as a whole, does otherwise provide that the Police Commission has the authority to suspend and/or otherwise discipline the Police Chief. The Police Commission focuses particularly on Kaua'i Charter § 11.04, which, *inter alia*, gives the Police Commission, and not the Mayor, the power to appoint and remove the Police Chief. The Police Commission contends that the power to suspend and/or otherwise discipline is subsumed in its authority to remove the Police Chief. The Police Commission additionally contends that, properly reading the Kaua'i Charter as a whole, it provides the Police Commission with supervision and authority over the Police Chief, which should include the power to discipline. Moreover, the Police Commission argues that the legislative history in the Charter Commission minutes reflects that the Kaua'i County Charter Commission intended to "depoliticize" the Police Department, thus delegating to the commission the authority to appoint and remove the Police Chief, and consistent with that intent, the Police Commission was intended to have the authority to suspend and/or otherwise discipline the Police Chief.

The Mayor responds that the interpretation proffered by the Police Commission would essentially remove the Police Department from the executive branch, a result that clearly was not the intent of the drafters of the Kaua'i Charter. The Mayor contends that principles of statutory interpretation provide that exceptions to his authority must be explicit, especially when other exceptions are expressly provided. The Mayor contends that we are bound by the plain language of the Kaua'i Charter to conclude that the Mayor has "direct supervision" over the Police Chief, that such authority has not been removed by other provisions of the Charter, and therefore the power to suspend and/or otherwise discipline the Chief remains with the Mayor. Further, the Mayor contends that the authority to suspend and/or otherwise discipline permits the Mayor to carry out his express duties under Kaua'i Charter § 7.05(A) to directly supervise departments and see that each department conducts all administrative activities honestly, efficiently and lawfully.

Article VII of the Kaua'i Charter sets forth provisions specific to the Mayor, and the starting point for our analysis is § 7.05. In pertinent part, § 7.05 provides:

Section 7.05. Powers, Duties and Functions. The mayor shall be the chief executive officer of the county. He shall have the power to:

A. **Except as otherwise provided, exercise direct supervision over all departments and coordinate all administrative activities and see that they are honestly, efficiently and lawfully conducted.**

B. Appoint the necessary members of his staff and other employees and officers whose appointments are not provided herein.

. . . .

D. Make temporary transfers of positions between departments or between subdivisions of departments.

E. Recommend to the council for its approval a pay plan for all officers and employees who are exempt from civil service and the position classification plan and who are not included in Section 3–2.1 of the Kaua'i County Code 1987, as amended.

. . . .

K. **Have a voice but no vote in the proceedings of all boards and commissions.**

L. Enforce the provisions of this charter, the ordinances of the county and all applicable laws.

M. Exercise such other powers and perform such other duties as may be prescribed by this charter or by ordinance.

(Emphasis added.) Given these provisions, the Mayor has general authority of "direct supervision" over all executive departments, is tasked with coordinating all administrative activities and ensuring that they are honestly, efficiently and lawfully conducted, and may appoint officers, *unless* other provisions of the Charter provide otherwise. Given the totality of § 7.05(A), the Mayor has broad powers, but it is possible for other provisions of the Kaua'i Charter to limit the Mayor's direct supervision. The parties agree that "direct supervision" generally includes the power to suspend and/or otherwise discipline. Moreover, among the provisions in § 7.05 addressing the "[p]owers, [d]uties and [f]unctions" of the Mayor, § 7.05(K) speaks to the Mayor's role with regard to commissions and provides that the Mayor has "a voice but no vote in the proceedings of all boards and commissions." Kaua'i Charter § 7.05(K).

Article XI of the Kaua'i Charter sets forth the provisions specific to the Police Department, and §§ 11.01–11.05 provide:

Section 11.01. Organization. There shall be a police department consisting of a police commission, a chief of police and the necessary staff.

Section 11.02. Police Commission. The police commission shall consist of seven members appointed by the mayor with the approval of the council. The commission shall hold regular public meetings at a designated time and place.

Section 11.03. **General Powers of the Commission.** **The police commission shall:**

A. Adopt such rules as it may consider necessary for the conduct of its business and the regulations of matters relating to the goals and aims of the department.

B. Review the annual budget prepared by the chief of police and may make recommendations thereon to the mayor.

C. Receive, consider and investigate charges brought by the public against the conduct of the department or any of its members and submit a written report of its findings to the chief of police within ninety days.

D. Refer all matters relating to administration of the department to the chief of police.

E. Adopt such rules to regulate political activities of the members of the police department.

Section 11.04. Chief of Police. **The chief of police shall be appointed by the police commission. He may be removed by the police commission only after being given a written statement of the charges against him and a hearing before the commission.** The chief of police shall have had a minimum of five years of training and experience in law enforcement, at least three years of which shall be in a responsible, administrative capacity. **He shall make such reports from time to time as the commission shall require, and shall annually make a report to the commission of the state of affairs and condition of the police department.**

Section 11.05. Powers, Duties and Functions. The chief of police shall be the administrative head of the police department and shall:

A. Be responsible for the preservation of the public peace, prevention of crime, detection and arrest of offenders against the law, preservation of life, protection of the rights of persons and property, and enforcement and prevention or violations of law.

B. Train, equip, maintain and supervise the force of police officers.

C. Be responsible for traffic safety and traffic safety education.

D. Serve process both in civil and criminal proceedings.

E. **Perform such other duties** as may be required by law or **as may be assigned by the commission.**

F. Promulgate rules and regulations necessary for the organization and internal administration of the department.

(Emphasis added.) Under these provisions, the Kaua'i Charter expressly gives the Police Commission close supervision over the Police Chief, including: the appointment and removal of the Police Chief; the authority to assign duties to the Police Chief; the authority to require reports from the Police Chief; the authority to receive annual reports from the Police Chief on the state of the affairs and conditions of the Police Department; the authority to adopt rules necessary for the regulation of matters relating to the goals and aims of the department; the authority to review the annual budget prepared by the Police Chief and to make recommendations thereon to the Mayor; and the authority to refer matters relating to the administration of the Police Department to the Police Chief.

Despite Kaua'i Charter §§ 11.02–11.05, the Mayor contends that because the Police Department falls within the executive branch of the County, he has direct supervision "[e]xcept as otherwise provided" and the Kaua'i Charter does not expressly omit from his direct supervision the authority to suspend and/or otherwise discipline the Police Chief. In short, the Mayor contends that the drafters of the Kaua'i Charter intended to place the Police Chief under the direct supervision of the Mayor, except as *explicitly* provided otherwise. From a historical perspective, we note that the Police Commission predated the Kaua'i Charter, see Hawaii Revised Statutes (HRS) §§ 52–31 to 52–35 (1968), and that the Kaua'i Charter, which became fully effective on January 2, 1969,[5] created the position of Mayor.[6] Given this background, the Kaua'i Charter appears to have somewhat reduced the Police Commission's pre-Charter authority, which had been extensive.[7]

However, even with the reduction of the Police Commission's pre-Charter authority over the Police Department, it retains significant supervisory authority under the Kaua'i Charter. The minutes from the Kaua'i County Charter Commission meetings, discussing potential provisions for the Kaua'i Charter, reveal that the Charter Commissioners heard testimony about the pre-Charter Police Commission, and while receiving consistent comments in favor of a "strong mayor concept," eventually maintained the Police Commission as the entity above the Police Chief.[8] Indeed, despite the Charter Commissioners' consideration regarding the "strong mayor concept," the Kaua'i Charter specifically reserves to the Police Commission the authority to appoint the Police Chief and to remove the Police Chief after a hearing, while providing that the Mayor has a voice, but no vote, in the proceedings of the Police Commission. Kaua'i Charter § 7.05(K). The Kaua'i Charter gives the Mayor the authority, however, to appoint the members of the Police Commission with the approval of the County Council. Kaua'i Charter § 11.02.

Considering the Kaua'i Charter in context in its entirety, a conclusion that the Mayor holds the authority to suspend and/or otherwise discipline the Police Chief would be inconsistent with the authority designated to the Police Commission under the various and numerous provisions in Article XI of the Kaua'i Charter. For example, if the Mayor could suspend and/or otherwise discipline the Police Chief, that could directly limit or prevent the Police Commission's express author-

5. Kaua'i Charter § 26.01 provides that "[t]his charter shall take full effect on January 2, 1969."

6. Prior to the Kaua'i Charter, the County of Kaua'i was largely governed by a board of supervisors and the chairman of the board of supervisors was considered the head of the county government. HRS §§ 62–1, 62–34, and 62–51 to 62–53 (1968). Under that governing structure, the chairman of the board had the authority to nominate, and with the advice and consent of the board appoint, the members of the Police Commission. HRS § 52–1 (1968).

7. See HRS Chapter 52 (1968), in particular HRS §§ 52–31 to 52–35, 52–42, and 52–44 to 52–45 (1968), regarding the level of autonomy held by the Police Commission prior to the adoption of the Kaua'i Charter.

8. See, e.g., Minutes, Kaua'i County Charter Commission (July 31, 1967); Minutes, Kauai County Charter Commission (Aug. 21, 1967); Minutes, Kauai County Charter Commission (Sept. 11, 1967); Minutes, Kauai Country Charter Commission (Dec. 4, 1967).

ity under §§ 11.03 to 11.05 to, among other things, assign duties to, require reports from, or refer matters to, the Police Chief. Equally significant, the authority of the Mayor to suspend or discipline the Police Chief could directly undermine the Police Commission's express authority to remove the Police Chief after issuing a written statement of the charges and holding a hearing, as set forth in § 11.04. In this regard, it is reasonably foreseeable that the Police Commission could hold a removal hearing, but then desire to issue discipline short of removal or to suspend the Police Chief pending further investigation that could potentially lead to removal. In such instances, if the Mayor held the authority to suspend and/or otherwise discipline the Police Chief, the Police Commission would be reliant on the Mayor to implement lesser punishment or to temporarily suspend the Police Chief pending further investigation that might lead to removal. In this circumstance, the Mayor, who under § 7.05(K) has a voice but no vote in the proceedings of the Police Commission, would in essence hold the ultimate vote as to any lesser form of punishment or suspension and could overrule the manner in which the Police Commission sought to address potential removal. The interpretation of the Kaua'i Charter proposed by the Mayor and adopted by the circuit court is thus inconsistent with express supervisory and removal authority delegated to the Police Commission.

Additionally, we agree with the Police Commission that under the circumstances of this case, the authority to suspend and/or otherwise discipline the Police Chief is implied in its power to remove the Police Chief under the Kaua'i Charter. In 1903, the Supreme Court of the Territory of Hawai'i noted that "[c]ourts differ as to whether the power of removal includes the power of suspension. . . ." *In re Austin*, 15 Haw. 114, 116 (Haw.Terr.1903). In *Austin*, the Auditor of the Territory was suspended by the Governor for certain specified causes until he was removed from office. *Id.* at 114. The supreme court did not resolve the issue of whether the power of removal includes the power of suspension, instead holding that, where the Governor held the power to remove only with the consent of the Senate,

and where the tenure of the employee is fixed by statute subject only to such removal, the Governor did not hold the power to suspend the employee without the consent of the Senate. *Id.* at 116. Therefore, the supreme court did not resolve the perceived jurisdictional split on the question of whether the power to remove included the power to suspend.

Since *Austin*, Hawai'i courts have not opined on the link, if any, between the power to remove and the power to suspend and/or otherwise discipline. Indeed, both the Police Commission and the Mayor cite to cases from other jurisdictions as support for their arguments regarding whether the power to suspend is a necessary incident of the power to remove. Moreover, as in 1903, there remains a jurisdictional split on this issue with cases that favor the Mayor and cases that favor the Police Commission:

> The power to suspend a public officer or employee is generally considered as included in the power to remove that individual. There is also authority for the view, however, that, absent specific statutory authority to do so, a public employer may not suspend an employee, even where it has power to terminate his or her employment permanently, since the power to suspend is not an inherent lesser power included within the power to terminate public employment.

63C Am. Jur. 2d *Public Officers and Employees* § 224 (1997) (footnotes omitted).

The United States Supreme Court has stated that "[t]he power to remove is, in the absence of statutory provision to the contrary, an incident of the power to appoint. And the power of suspension is an incident of the power of removal." *Burnap v. United States*, 252 U.S. 512, 515, 40 S.Ct. 374, 64 L.Ed. 692 (1920) (citations omitted); *see also De Marco v. Bd. of Chosen Freeholders of Bergen Cty.*, 36 N.J.Super. 382, 115 A.2d 635, 636 (Law Div.1955); *Delaney v. Del Bello*, 81 A.D.2d 566, 437 N.Y.S.2d 405, 408 (App. Div. 1981); *State ex rel. Thompson v. Seigler*, 230 S.C. 115, 94 S.E.2d 231, 235 (1956). However, *Burnap, De Marco, Delaney,* and *Thompson* all involved suspension during the course

of disciplinary proceedings, criminal proceedings, or pending investigation. *Burnap*, 252 U.S. at 514, 40 S.Ct. 374; *De Marco*, 115 A.2d at 636; *Delaney*, 437 N.Y.S.2d at 406; *Thompson*, 94 S.E.2d at 232. As noted in *Delaney*, there is a difference between the power to suspend pending the course of proceedings and the power to suspend as a lesser form of punishment:

> Whether the power to remove includes the power to suspend, must [ ] depend, among other things, upon the question whether the suspension in the particular case would be an exercise of a power of the same inherent nature as that of removal, and only a minor exercise of such power, or whether it would work such different results that no inference of its existence should be indulged in, based only upon the grant of the specific power to remove.

*Delaney*, 437 N.Y.S.2d at 407 (block format omitted) (quoting *Gregory v. Mayor*, 113 N.Y. 416, 21 N.E. 119, 120 (1889)). It appears to be generally accepted that the authority to suspend pending a disciplinary hearing is implied in the authority to remove. *See Delaney*, 437 N.Y.S.2d at 408; *Griner v. Thomas*, 101 Tex. 36, 104 S.W. 1058, 1060 (1907). *But see Bringgold v. City of Spokane*, 27 Wash. 202, 67 P. 612, 614–15 (1902).

What remains unclear is whether the power to suspend as a lesser form of punishment is implied in the power to remove. The Supreme Court of Washington, in holding that the power to suspend is not implied in the power to remove, has noted that a suspension of a public employee

> leaves his constituents unrepresented and without remedy. Expulsion creates a vacancy that can be supplied by a new election. Suspension from the duties of the office creates no vacancy. The seat is filled, but the occupant is silenced. The charter vests no such power in the council. It would be extraordinary if it did. The power is to expel, not to suspend.

*Bringgold*, 67 P. at 614 (citation omitted). Similarly, in *Delaney*, the New York Supreme Court, Appellate Division, citing to *Gregory*, 21 N.E. 119, and *Emmitt v. City of New York*, 128 N.Y. 117, 28 N.E. 19 (1891), noted that a rule established by the older

cases was that "the power to suspend without pay will not be inferred from the power of removal where it accomplishes a different result and constitutes an abuse of traditional rules of governmental service." 437 N.Y.S.2d at 407. The New York Supreme Court, Appellate Division, also noted in *Whelan v. Pitts*, 150 A.D.2d 380, 540 N.Y.S.2d 536 (App. Div. 1989), that "[a]bsent specific statutory authority to do so, a public employer may not suspend an employee, even where it has the power to terminate his employment permanently. The power to suspend is not an inherent lesser power included within the power to terminate public employment[.]" *Id.* at 538.

To the contrary, however, the Supreme Court of New Jersey has noted that while "[t]he power to discipline through suspension may frequently be a matter distinct from the power to remove from office, ... generally the power to suspend is legally viewed as included within the power to remove since it is merely a lesser form of punishment." *Russo v. Walsh*, 18 N.J. 205, 113 A.2d 516, 519 (1955) (emphasis added); *see also* 63C Am. Jur. 2d *Public Officers and Employees* § 224.

As also suggested in *Russo v. Governor of New Jersey*, 22 N.J. 156, 123 A.2d 482 (1956), the reasonable exercise of supervisory powers links the power to remove and the power to issue lesser punishment. In *Russo v. Governor of New Jersey*, the Supreme Court of New Jersey held that provisions giving the Governor the right to remove an employee also included the right to impose all intermediate or lesser degrees of punishment.

> The power to remove without permitting any intermediate degrees of penalty clearly would not be consistent with the concept of adequate supervision. Nor could it have been reasonably intended that the Governor should have the power to discharge an employee for some obvious but minor infraction of his duty. The purpose of the constitutional provision in question is obviously to give the Governor power commensurate with his responsibility. To grant him the power only to remove for cause and to withhold from him the power to administer lesser penalties in appropriate

instances is not only unrealistic, but it will also in most cases be ineffective to accomplish the fundamental purpose for the repose of the authority.

*Id.* at 488 (emphasis added). Thus, especially where the entity holding the power to remove also holds supervisory powers, it reasonably follows that the power to remove should include the power to suspend or to impose other discipline.

Additionally, cases from the Supreme Judicial Court of Massachusetts provide guidance. In *McGonigle v. Governor*, 418 Mass. 147, 634 N.E.2d 1388 (1994), the Supreme Judicial Court of Massachusetts held that the state legislature did not intend to confer on the governor or attorney general the power to suspend a sheriff. *Id.* at 1391. The court noted that the legislature had provided a distinct procedure for the court itself to remove certain elected county officials, including sheriffs, from office. *Id.* at 1390–91. "Although this provision does not specifically enumerate the authority to suspend such an official, it is clear that the power to remove an official includes within it the authority to suspend that individual." *Id.* at 1391 (footnote omitted). Thus, the court determined that it had the authority to suspend the sheriff. *Id.*

In *McGonigle*, the court cited to its earlier decision in *Tobin v. Sheriff of Suffolk County*, 377 Mass. 212, 385 N.E.2d 972 (1979), for the general proposition that the authority to remove a sheriff or a court officer includes the authority to suspend. *McGonigle*, 634 N.E.2d at 1391. In *Tobin*, a chief deputy sheriff assigned to a court, who had been appointed by the sheriff, was suspended without pay by the sheriff after being indicted. In concluding that the sheriff had the authority to suspend, the supreme judicial court did not limit its holding to suspension pending the criminal proceedings, stating:

We further conclude that the authority ... to remove a chief deputy sheriff or a court officer includes within it the authority to

suspend the employment of such a person. It would be a strange situation indeed if a sheriff had authority only to remove a court officer and not to impose any lesser penalty. Not every misdeed or alleged misdeed by a court officer would require his removal from office, and yet some discipline or action to protect the public interest might be necessary.

385 N.E.2d at 973 (emphasis added).

The ideas expressed in the New Jersey and Massachusetts cases are persuasive in conjunction with considering the provisions of the Kaua'i Charter related to the Police Department. Given the level of supervision that the Kaua'i Charter gives to the Police Commission in Kaua'i Charter §§ 11.03–11.05, and that, despite the Mayor's broad general supervisory authority, Kaua'i Charter § 7.05(K) gives the Mayor a voice, but no vote, in the proceedings of the Police Commission, we hold that, reading the Kaua'i Charter as a whole, the power to suspend and/or to otherwise discipline the Police Chief is implied in the power to remove that is expressly bestowed on the Police Commission under the provisions of the Kaua'i Charter. Thus, reading the Kaua'i Charter as a whole, it "otherwise provides" that the Police Commission has the authority to suspend and/or otherwise discipline the Police Chief. As noted above, a conclusion otherwise would undermine and hinder the Police Commission's exercise of its delegated authority under the Kaua'i Charter to supervise and, when warranted, to remove the Police Chief.

In our view, the conclusion above reinforces the government structure created by the Kaua'i Charter and gives recognition to all of the pertinent Charter provisions. While the Mayor is the head of the executive branch, and, under the Kaua'i Charter, has certain supervisory authority over the Police Chief, the general structure of the executive branch places the Police Commission between the two.[9] Kaua'i Charter §§ 11.02 and

---

9. Kaua'i County Code (KCC) § 2–3.3 Exhibit A, which is a table entitled "Table of Organization of the Executive Agencies," provides a visual representation of the tiered structure of the executive branch of the County of Kaua'i. At the top of the chart is the Electorate. Directly under the

Electorate is the Mayor. Below the Mayor are the persons or entities that control the various Executive Agencies, including the Police Commission. If an entity, like the Police Commission, is the head of the Executive Agency, directly under the entity is listed the individual head of

11.04. The Mayor has the power, among other things, to appoint members to the Police Commission with the approval of the County Council. Kaua'i Charter § 11.02. In turn, Article XI of the Kaua'i Charter gives the Police Commission a number of ways in which it is authorized to exercise supervision over the Police Chief.

Based on the totality of the above considerations, we are convinced that the Kaua'i Charter gives the power to suspend and/or otherwise discipline the Police Chief to the Police Commission. We note that our holding in this case is based on the particular circumstances and the specific provisions of the Kaua'i Charter related to the Police Department, and we intend no comment with regard to the Mayor's authority in other respects.

## V. Conclusion

Based on the foregoing, the circuit court erred in granting the Mayor's cross-motion for summary judgment and in denying the Police Commission's motion for summary judgment.

Accordingly, we reverse the Final Judgment For Declaratory Judgment entered by the circuit court on January 2, 2013, and hold that the Kaua'i Police Commission is authorized under the Charter of the County of Kaua'i to suspend and/or otherwise discipline the Chief of Police of the County of Kaua'i.

the Agency, i.e., the Police Chief. KCC § 2–3.3

